IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

HOLLY MURPHY as Personal Representative   :
of the ESTATE OF MATTHEW BARANIAK   :
    :
    :
        Plaintiffs   :
    :       JURY TRIAL DEMANDED
  v.   :
    :       CASE NO.:
DAUPHIN COUNTY   :
2 S. Second Street, 4th Floor   :
Harrisburg, PA 17101   :
    :
RIVER DRIVE SERVICE CENTER, INC.   :
4613 North Front Street   :
Harrisburgh, PA 17110   :
    :
SHANE STALEY   :
4613 North Front Street   :
Harrisburgh, PA 17110   :
    :
and   :
    :
JAMES ELLERMAN   :
1426 State Road   :
Duncannion, PA 17020   :
    :
        Defendants.   :
       :

## **COMPLAINT**

Plaintiff, Holly Murphy as Personal Representative of the Estate of Mathew Baraniak,

by and through her undersigned counsel, Kimberly V. Spangler-Loutey, Esquire, and Patricia

A. Shipman, Esquire, files this Complaint against the above-captioned Defendants, and as

grounds in support thereof, alleges the following:

## **INTRODUCTION**

1.     This death case arises from a horrific and preventable incident suffered by Matthew Baraniak while working at the River Drive Service Center (hereinafter "River Drive") during his confinement as a work release inmate at the Dauphin County Work Release Center (hereinafter "WRC"). Matthew's tragic death was the direct result of the willfully negligent, illegal, and dangerous tasks he was forced to undertake as a work release inmate, without training, proper equipment or supervision while working for River Drive.

2.     The actions, and inactions of Dauphin County and its agents that failed to protect Matthew from and placed him in an obviously and predictably dangerous situation while he was under their charge, as well as the defective policies and procedures of Dauphin County that enable WRC inmates such as Matthew to work in dangerous conditions without proper safety procedures, equipment, certifications, or supervision and which  prevent WRC inmates such as Matthew from avoiding unsafe workplace conditions directly caused Matthews death and violations of his federally protected rights.

3.     Plaintiff brings this action on behalf of Matthew's Estate pursuant to 20 Pa. Consolidated Statute § 3373 and 42 Pa. Consolidated Statute § 8302 for damages suffered by the Estate as a result of Matthew's death as well as for the pain and suffering which Matthew underwent prior to his death.

## JURISDICTION

4.     This civil rights action is brought pursuant to 42 U.S.C. §1983.

5.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4). This Court has supplemental jurisdiction of the Pennsylvania law claims pursuant to § 1367.

6.      Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2) because the events giving rise to the claims occurred within this district.

## PARTIES

7.      Decedent Mathew Baraniak (hereinafter "Matthew") was born on July 19, 1989 and died on July 13, 2019, less than one week shy of his thirtieth birthday.

8.      Plaintiff, Holly Murphy is Matthew's natural twin sister, the Personal Representative of Mathew's Estate, and a resident of Georgia.

9.      Plaintiff Murphy filed with the Office of the Register of Wills of Dauphin County, Pennsylvania a Petition for Grant of Letters, File No. 2221-0845 thereby enabling her to serve as personal representative in proceedings before this Court.

10.     As personal representative, Plaintiff Murphy has the right to bring survival claims on behalf of the Estate pursuant to Pennsylvania's Survival Act, 42 Pa.C.S. § 8302, and wrongful death claims on behalf of the beneficiaries of the Estate pursuant to Pennsylvania's Wrongful Death Act, 42 Pa.C.S. § 8301.

11.     The statutory beneficiaries under the Wrongful Death Act pursuant to 42 Pa.C.S. § 8301(b) are Matthew's minor daughter, Estella Baraniak, who resides in Duncannon, Pennsylvania and Matthew's parents, Brian and Jaqueline Baraniak who reside in Halifax, Pennsylvania.

12.     Estella Baraniak, a minor, is the only child of Mathew Baraniak

13.     At no time during his life did Plaintiff's Decedent Matthew Baraniak bring an action to recover damages for his personal injuries concerning this matter and no other action has been commenced to recover damages for his death.

14.     Defendant Dauphin County is, and at all times relevant to this Complaint was, a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is located at 2 S. Second Street, 4th Floor, Harrisburg, PA 17101, and at all times relevant, controlled the Dauphin County Work Release Center and employed Matthew Miller.

15.     At all relevant times, Dauphin County controlled the actions or inactions of the Dauphin County Work Release Center and was acting by and through its duly authorized administrators, agents, and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with Dauphin County 's polices, customs, practices, and procedures.

16.     The Dauphin County Work Release Center is located at 919 Gibson Boulevard, Steelton, Pa 17113.

17.     Matthew Miller, (hereinafter "Miller") was at all relevant times, the director of the Dauphin County Work Release Center with a business address of 919 Gibson Boulevard, Steelton, Pennsylvania. At all times relevant, Miller was acting under the color of law, in his capacity as an agent, servant or employee of Defendant Dauphin County.

18.     Matthew Miller was responsible for establishing, maintaining and enforcing the customs, practices and policies of the Work Release Center, subject to and consistent with applicable state and federal law.  He is being sued in both his official and individual capacities.

19.     Defendant River Drive Service Center, Inc. ("River Drive") is a Pennsylvania Corporation with a registered address and principal place of business located at 4613 North Front Street in Harrisburg, Pennsylvania.

20.     Defendant River Drive employed Matthew during his incarceration at the Dauphin County Work Release Center.

21.     Defendant River Drive regularly conducts business in Dauphin County, within the Middle District of Pennsylvania.

22.     At all relevant times, Defendant River Drive was acting by and through its duly authorized administrators, agents, and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law.

23.     Defendant Shane Staley is the Vice President of River Drive Service Center, Inc.

24.     At all relevant times, the Shane Staley owned, operated, maintained and otherwise controlled the River Drive Service Center and controlled and supervised the work being done at the facility.

25.     Defendant James Ellerman is an employee of River Drive and at the time of the incident was responsible for supervising Matthew on behalf of River Drive and Dauphin County.

26.     At all relevant times, Mr. Ellerman acted as an agent of, and within the scope of his agency with, Defendant River Drive.

## **FACTS**

27.     Plaintiff hereby adopts and incorporates by reference any and all facts previously stated, as if fully set forth herein.

28.     In or around May, 2019 Matthew Baraniak was sentenced by the Dauphin County Court to serve time as an inmate at the Dauphin County Work Release Center.

29.     The Dauphin County Work Release Center (hereinafter "WRC") is a Corrections facility utilized by the Courts to incarcerate sentenced offenders in order to

provide an opportunity for them to maintain previously secured or newly gained employment.

30.     As a condition of Matthew's sentence to the Work Release Center he was required to continue working at River Drive, a heavy equipment repair and recovery business.

31.     If Matthew failed to continue his employment with River Drive, it could lead to his transfer and incarceration at the Dauphin County prison for the remainder of his sentence.

32.     At the time the WRC assigned Matthew to work at River Drive, River Drive had numerous ongoing and publicly available OSHA violations, related to workplace safety and hazardous conditions.

33.     While incarcerated, Matthew worked at River Drive during its normal business hours Monday through Friday, as well as Saturdays when the service center was closed.

34.     Matthew had worked at River Drive for approximately six months prior his incarceration at the Dauphin County Work Release Center. During this time, Matthew was never required worked on Saturdays when the Service Center was closed.

35.     On Saturday July 13, 2019, Matthew left the Dauphin County Work Release Center and reported to his job site at River Drive Service Center.

36.     Because July 13, 2019 was a Saturday, a day when River Drive is usually closed, the only people at the service center that day were Matthew and his supervisor James Ellerman.

37.     Despite not having the proper training or certifications, and in violation of multiple OSHA regulations, Matthew was instructed to get on a high scissor lift, and to use an acetylene torch to remove the upper hinge area door from the back of a garbage truck,

which River Drive had dangerously and improperly suspended by metal chains attached to a heavy-duty fork lift.

38.    Mr. Ellerman left Matthew completely alone outside the back of the building to complete this dangerous task while Mr. Ellerman was in the office at the front of the building.

39.    While Matthew was approximately fifteen to twenty feet off the ground on the scissor lift using the torch to cut the door from the back of the garbage truck, the tailgate section shifted upward from the main truck body, it upended the fork lift and stuck Matthew in the head, who was set ablaze by the still burning torch as he was knocked back on the lift.

40.    After hearing a loud noise, Mr. Ellerman came to the back of the building and called out for Matthew.

41.    When he did not get a response, he began to look for Matthew and found him lying on the lift, unresponsive, bleeding from a severe head wound and engulfed in flames.

42.    Ellerman was able to extinguish the flames and call 911.

43.    After the police and EMT arrived, they determined that Matthew was deceased.

44.    The police noted that Matthew had suffered a laceration to the back of his head that nearly went from ear to ear and had serious burns to his entire body.

45.    The coroner concluded that Matthew died from a traumatic brain injury and severe burns to the majority of his body.

46.    After the incident, the Susquehanna Police Department contacted Occupational Safety and Health Administration ("OSHA") so they could come to the site to conduct an investigation.

47.   The OSHA investigation revealed that River Drive had been in willful violation of several OSHA safety regulations, which directly lead to Matthew's horrific death. These violations include:

   a.  Section 1910.147(c)(1) which requires employers to establish a program consisting of energy control procedures, employee training and periodic inspections to ensure that before any employee performs any servicing or maintenance on a machine or equipment where the unexpected energizing, startup or release of stored energy could occur and cause injury, the machine or equipment shall be isolated from the energy source and rendered inoperative;

   b.  Section 1910.147(c)(4)(i) which requires employers to develop, document and utilize procedures for the control of potentially hazardous energy when employees are engaged in activities where the unexpected energizing, startup or release of stored energy could occur and cause injury;

   c. Section 1910.178(a)(4) which prohibits modifications and additions to powered industrial truck which affect capacity and safe operation; and

   d.   Section 1910.178(l)(3)(ii)(I) which governs other unique or potentially hazardous environmental conditions in the workplace that could affect safe operation of powered industrial trucks.

48.   OSHA cited and fined River Drive for numerous violations related to Matthew's accident.

49.   The citations were based on the OSHA inspectors' observations of the accident scene.

## CAUSES OF ACTION

**COUNT ONE**

**CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS - 42 U.S.C. §§1983**
**Plaintiff v. Dauphin County**

50.     The Plaintiff hereby adopts and incorporates by reference all preceding paragraphs, as if fully set forth herein.

51.     At all times relevant hereto, Matthew Miller, as state actor and/or person acting under color of state law, acted both in their official capacities, and individually, to deprive Plaintiff of his constitutional and civil rights.

52.     At all times relevant hereto, Miller had final decision making authority regarding the policies and procedures of the Dauphin County Work Release Center, Matthew's employment at River Drive, and the conduct by which he was deprived of his constitutional and civil rights.

53.     Pursuant to the Fourteenth Amendment, Matthew was entitled to safe conditions during confinement at the Dauphin County Work Release Center.

54.     The Eighth Amendment entitled Matthew to be free from cruel or unusual punishment.

55.     The Dauphin County Work Release Male Resident Guide, drafter by Miller, contains official policies and procedures of the Dauphin County Work Release Center.

56.     According to official WRC policy, when a decision is made by any WRC staff or supervisors, WRC inmates must comply with that decision.  WRC inmates are prohibited from seeking help from any other staff member to mediate a staff decision. According to WRC official policy, "Attempts to circumvent staff decisions will not be tolerated."

57.     Inmates of the WRC must maintain a full-time job or close to full-time hours in order to stay at the WRC.

58.     In addition to full time employment, inmates of the WRC are encouraged to have a second or part time job.

59.     Inmates' pay checks are provided from their employers directly to the WRC, which retains a large portion *inter alia* for rent, fees, and fines.

60.     Pursuant to Dauphin County's written WRC policy, Inmates such as Matthew who are subject to unsafe working conditions cannot simply quit their employment without suffering consequences such as loss of privileges, bunk arrest or return to the Dauphin County Prison (DCP).

61.     Inmates of the WRC who have received approval of the WRC Employment Coordinator, Deputy Director or the Director, in agreement with their assigned Casebook Officer to change their employment are still required to continuing working and give a two week notice to their employer before they are permitted to terminate their employment.

62.     Inmates of the WRC may not take time off from a current job (full or part time) to go fill out an application or for an interview with another prospective employer.

63.     Inmates of the WRC are required to travel directly to and from the work site by the means of transportation approved by the WRC.

64.     The WRC closely monitors oversight of each work release inmate's activities while out of the work release center using GPS tracking devices.

65.     While WRC has an entire policy and procedure for reporting sexual abuse and sexual harassment in the workplace, the WRC does not have any policies or procedures for reporting OSHA violations or other unsafe and dangerous working conditions.

66.     Defendant Dauphin County's practice, policy, and custom of discouraging, and preventing WRC inmates such as Matthew from reporting or avoiding unsafe workplace conditions directly causes violations of federally protected rights.

67.     Pursuant to Dauphin County's written WRC policy and procedures, WRC inmates such as Matthew are at the mercy of their employers, to follow all instructions regardless of safety concerns.

68.     Pursuant Dauphin County's written WRC policy and procedures, employers have the ability to report WRC inmates such as Matthew for failure to follow their instructions --no matter how dangerous -- and the coercive ability to terminate them for such failures, which under Dauphin County's written WRC policy and procedures could lead to consequences such as loss of privileges, bunk arrest or return to the Dauphin County Prison (DCP).

69.     Defendant Dauphin County's practice, policy, and custom of encouraging WRC inmates such as Matthew to continue working in unsafe and dangerous workplace conditions directly causes violations of federally protected rights.

70.     Defendants have a duty to adopt a training and supervision regime that adequately meets the needs of the public and does not result in the violation of rights.

71.     It is believed and therefore averred, Defendants' training program was inadequate to train its employees to carry out their duties and that they failed to adequately supervise their employees.

72.     Upon information and belief, Dauphin County and Defendant Miller maintains a system of grossly inadequate training pertaining to the assessment and monitoring of inmates and their work conditions at their assigned places of employment while incarcerated in the WRC.

73.     It is believed and therefore averred, Defendants' failure to adequately train and/or supervise amounted to deliberate indifference, because inaction resulted in a violation of Matthew's rights.

74.     Upon information and belief, Dauphin County and Defendant Miller has maintained either no system or an inadequate system of review of the work conditions faced by Dauphin County Work Release inmates at their assigned places of employment while incarcerated in the WRC.

75.     It is believed and therefore averred, Defendants' failure to adequately supervise and evaluate the work conditions faced by Dauphin County Work Release inmates at their assigned places of employment amounted to deliberate indifference, because inaction resulted in a violation of Matthew's rights.

76.     It is believed and therefore averred, Defendants knew work release inmates such as Matthew would confront hazardous work conditions, be compelled to perform dangerous tasks, and suffer serious or fatal injuries, such as the particular situation enumerated herein.

77.     It is believed and therefore averred, the matter at hand was a matter that carried great risk if mishandled.

78.     It is believed and therefore averred, the matter at hand regularly and/or frequently leads to the deprivation of rights enumerated in the United States and Pennsylvania Constitutions.

79.     Defendant Dauphin County failed to monitor or require the employers of work release inmates to disclose any know risk or danger inherent in the inmates' duties, nor to disclose any past or pending OSHA violations related to unsafe working conditions.

80.     The WRC's Direct Commitment intake form only requires the employers name, address and phone number, the inmate's job title, pay rate and the name of his or her supervisor.

81.     Defendant Dauphin County and Miller did not require the employers of work release inmates to describe the nature or duties of the inmate's employment.

82.     Defendant Dauphin County and Miller did not require the employers of work release inmates to disclose the certifications or training an inmate may require to safely or legally perform their duftites, nor does it require proof that the inmates have obtained these necessary trainings or certifications.

83.     Defendant Dauphin County and Miller's failure to properly evaluate River Drive as an appropriate assigned employer, failure to evaluate Matthew's lack of qualifications, training and certifications for the duties he was assigned at River Drive, and failure to monitor the hazardous workplace conditions Matthew faced while working at River Drive compelled  Matthew to work in a hazard situation, and to perform dangerous tasks without proper training or supervision which was the direct foreseeable cause of Matthews death.

84.     Defendant Dauphin County and Miller's practice, policy, and custom of approving, permitting, and assigning inmates to work in dangerous conditions and/or to perform obviously dangerous and hazardous duties, demonstrates a deliberate indifference to the safety of work release inmates, and directly causes violations of federally protected rights.

85.     Defendant Dauphin County and Miller's practice, policy, and custom of approving and assigning inmates to work in dangerous employment situations without adequate supervision, and with willful disregard for the obvious dangers inherent in the performance of the inmates' duties, demonstrates a deliberate indifference to the safety of work release inmates such as Matthew, and directly causes violations of federally protected rights.

86.     Defendant Dauphin County and Miller's practice, policy, and custom of approving and assigning inmates to work in employment situations without properly vetting the conditions and inherent dangerous of the inmates' workplace and duties therein, demonstrates a deliberate indifference to the safety of work release inmates such as Matthew, and directly causes violations of federally protected rights.

87.     Defendants Dauphin County and Miller's practice, policy, and custom of approving and assigning inmates to work in job situations without ensuring that the inmates are properly trained, qualified, or certified to perform the duties to which they are assigned, demonstrates a deliberate indifference to the safety of work release inmates such as Matthew, and directly causes violations of federally protected rights.

88.     Defendant Dauphin County and Miller's approval and assignment of Matthew to work at River Drive, where he was compelled to perform hazardous duties to which he was not properly trained, qualified, or certified to perform deprived Matthew of his federally protected rights and was a direct foreseeable cause of Matthews death.

89.     Defendant's breach of the aforementioned is a violation of Matthew's Eighth and Fourteenth Amendment rights under the Pennsylvania and United States Constitutions.

90.     Defendant's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly, and deliberately indifferent conduct was under the color of state law pursuant to an unconstitutional, custom, policy, and practice and violated Plaintiff's constitutional, civil and other rights.

91.     Defendant Dauphin County has encouraged, tolerated, and/or ratified policies, practices and customs in the WRC that cause violations of constitutional rights.

92.     As a result of Dauphin County's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly, and deliberately indifferent concerted conduct under the color of state law pursuant to an unconstitutional, custom policy, and practice, Matthew suffered great pain and suffering, loss of life, loss of earning capacity, economic loss and loss of his constitutional and other state and federal rights.

93.     As a direct and proximate result of Dauphin County and Miller's conduct, committed in his official and individual capacity, and under color of state law, Matthew suffered a violation of his 8th Amendment right to be free from cruel and unusual punishment, the denial of procedural due process, denial of equal protection, denial of his property rights, and denial of his right to liberty in his person and property.

94.     As a further direct and proximate result of the acts of Defendant Dauphin County and Miller, Matthew suffered great pain and suffering, loss of life, loss of earning capacity, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Plaintiff, Holly Murphy as Personal Representative of the Estate of Matthew Baraniak, respectfully requests this Court make a declaratory judgment stating the Defendants violated Plaintiff's Decedent's rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT II

## CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS - 42 U.S.C. §§1983

**Plaintiff v. River Drive Service Center, Inc., Shane Staley, and James Ellerman**

95.     The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

96.     At all times relevant hereto, Defendant Shane Staley, as state actor and/or person acting under color of state law, acted both in his official capacities, and individually, to deprive Plaintiff of his constitutional and civil rights.

97.     At all relevant times, Shane Staley operated, maintained and otherwise controlled the River Drive Service Center and controlled and supervised the work being done at the facility.

98.     At all times relevant hereto, Defendant James Ellerman, as state actor and/or person acting under color of state law, acted in his official capacity, and individually to deprive Plaintiff of his constitutional and civil rights.

99.     At the time of the incident, James Ellerman was the only person at the River Drive Service Center and controlled and supervised the work being done at the facility when the accident occurred.

100.     At all times relevant hereto, Defendants Staley and Ellerman were acting in the course and scope of their employment with Defendant River Drive, and at all times were the agents, servants and employees of Defendant River Drive.  As such, Defendant River Drive is vicariously liable for the wrongful actions of Defendants Staley and Ellerman, under doctrines including, but not limited to, agency, respondeat superior, master-servant, joint venture and contract.

101.     The actions of the Defendants were taken under color of state law.

102.     Persons, such as Defendants to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eight and Fourteenth Amendments.

103.     Pursuant to the Fourteenth Amendment, Matthew was entitled to safe conditions during confinement at the Dauphin County Work Release Center.

104.    The Eighth Amendment entitled Matthew to be free from cruel or unusual punishment.

105.    When private individuals or groups, such as the Defendants are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.

106.    One of the Dauphin County Work Release Center's core penological functions is supervising the behavior of the inmates in the custody of its prison system.

107.    Another penological function embraced by the Dauphin County Work Release Center was to provide job experience to some of its inmates. The Dauphin County Work Release Center delegated a portion of these responsibilities to River Drive by entrusting River Drive personnel, including Defendants Staley and Ellerman to supervise the activities of Matthew who was permitted to work at River Drive.

108.    Pursuant to the Dauphin County Work Release Center program, River Drive personnel effectively acted as agents of the Department of Corrections in monitoring Matthew while he was away from the WRC but restrained and in custody on the River Drive premises.

109.    River Drive personnel, including Defendants Staley and Ellerman were required to enforce the Dauphin County Work Release Center rules prohibiting prisoners such as Matthew from using alcohol or drugs, receiving visitors, making personal telephone calls, or leaving the facility, except to return to the Work Release Center.

110.    River Drive personnel, including Defendants Staley and Ellerman were required to report violations of the rules to the WRC and to cooperate with Corrections officials in monitoring Matthew and implementing security policies.

111.    Pursuant Dauphin County's written WRC policy and procedures, employers have the ability to report WRC inmates such as Matthew for failure to follow their instructions --no matter how dangerous -- and the coercive ability to terminate them for such failures, which under Dauphin County's written WRC policy and procedures could lead to consequences such as loss of privileges, bunk arrest or return to the Dauphin County Prison (DCP).

112.    In their supervisory positions over Matthew while working at River Drive, Defendants Staley and Ellerman acted as the functional equivalent of prison guards.

113.    River Drive personnel, including Defendants Staley and Ellerman acting under that delegated authority also bore the duty under the Eighth Amendment to refrain from using excessive force against prisoners.

114.    River Drive personnel, including Defendants Staley and Ellerman acting under that delegated authority also bore the duty under the Eight and Fourteenth Amendments to refrain from subjecting Matthew to obviously unsafe and dangerous working conditions.

115.    Defendants River Drive, Staley and Ellerman compelled Matthew to perform hazardous duties to which they knew he was not properly trained, qualified, or certified to perform, depriving Matthew of his federally protected rights and was a direct foreseeable cause of Matthews death.

116.    Defendants River Drive, Staley and Ellerman acted with deliberate indifference, when they compelled Matthew to perform hazardous duties to which they knew he was not properly trained, qualified, or certified to perform that exposed Matthew to an unreasonable risk of serious harm.

117.    Defendants River Drive, Staley, and Ellerman acted with deliberate indifference, when they created hazardous workplace conditions that exposed Matthew to an unreasonable risk of serious harm.

118.    Defendants River Drive, Staley, and Ellerman were deliberately indifferent to Matthew's safety and federally protected rights, including the right to be free from cruel and unusual punishment, in the following ways:

   a.  knowingly compelling Matthew to perform hazardous duties to which he was not properly trained, qualified, or certified to perform;

   b.  failing to provide proper training to Matthew before compelling Matthew to perform hazardous duties;

   c.  failing to supervise Matthew while he was engaged in the performance of hazardous duties;

   d.  creating and allowing hazardous work place conditions; and

   e.  compelling Matthew to perform hazardous duties without necessary and proper protective equipment.

119.    Defendants' breach of the aforementioned is a violation of Plaintiff's Decedent's Eighth and Fourteenth Amendment rights under the Pennsylvania and United States Constitutions.

120.    As a direct and proximate result of Defendants' conduct, committed in their official and individual capacities, and under color of state law, Matthew suffered cruel and unusual punishment, denial of procedural due process, denial of equal protection, and denial of his right to liberty in his person and property.

121.    As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, deliberate indifference, conscience shocking and willful and

wanton conduct of defendants, and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives and employees, Matthew was caused to sustain serious and excruciating personal injuries which ultimately led to his death.

122.    As a further direct and proximate result of the acts of Defendants, Matthew suffered great pain and suffering, loss of life, loss of earning capacity, economic loss and loss of his constitutional and other state and federal rights.

123.    The Defendants' actions were intentional, willful, purposeful, malicious, and were undertaken with clear knowledge and foresight that the harm complained of by the Plaintiff would occur, and further with full knowledge that its their actions would violate or impair Matthew's constitutional and civil rights.

WHEREFORE, Plaintiff, Holly Murphy as Personal Representative of the Estate of Matthew Baraniak, respectfully requests this Court make a declaratory judgment stating the Defendants violated Plaintiff's Decedent's rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT III

### STATE LAW CLAIM – NEGLIGENCE
### Plaintiff v. River Drive

124.    The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

125.    At all relevant times, River Drive owned, operated, maintained and otherwise controlled the River Drive Service Center and controlled and supervised the work being done at the facility.

126.    At all relevant times, River Drive was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with River Drive.

127.    River Drive, its agents and employees having possession and control of the Service Center and the work being done there, owed a duty to all those working at the Service Center, including Matthew, a business invitee, to provide a reasonably safe work environment, free from unreasonable and dangerous hazards.

128.    At all times relevant herein, Defendant River Drive and its agents and employees, owed Matthew a duty to use due care under the circumstances.

129.    Defendant River Drive is not shielded from liability by the Worker's Compensation Act because decedent was incarcerated and on work release at the time of the accident and therefore disqualified from Worker's Compensation.

130.    The Workers' Compensation Act precludes collection of Workers' Compensation benefits by a claimant who is incarcerated after a conviction. See, Section 306(a)(2) of the Worker's Compensation Act.

131.    An individual on work release, such as Matthew is considered "incarcerated" for purposes of applying the Workers' Compensation Act. See, Henkels & McCoy, Inc. v. Workers' Compensation Appeal Board (Henrie), 565 Pa. 493, 776 A.2d 951 (2001); See also, Brinker's Int'l, Inc., v. Workers' Compensation Appeal Board 721 A.2d 406 (Pa Cmwlth.1998).

132.    Defendants knew or should have known that compelling Matthew to perform hazardous duties to which he was not properly trained, qualified, or certified to perform would lead to lead to severe injury or death.

133.    Defendants knew or should have known that creating and allowing illegal, dangerous, and hazardous work place and in violation of multiple OSHA safety regulations conditions would lead to lead to severe injury or death.

134.    The negligence, gross negligence, intentional carelessness and recklessness of Defendant River Drive, their agents, servants, and/or employees, which were the cause of Matthew's death, consisted of, but was not limited to, the following:

    a.   knowingly compelling Matthew to perform hazardous duties to which he was not properly trained, qualified, or certified to perform;

    b.   failing to provide proper training to Matthew before compelling Matthew to perform hazardous duties;

    c.   failing to supervise Matthew while he was engaged in the performance of hazardous duties;

    d.   creating and allowing illegal, dangerous, and hazardous work place conditions;

    e.   operating an unsafe work environment in violation of multipole OSHA safety regulations;

    f.   violations of OSHA safety regulations described herein;

    g.   failing to ensure safe usage of cutting and welding equipment on its property;

    h.   failing to have in place a designated fire watch person while Matthew was using an acetylene torch, 15 to twenty feet off of the ground;

    i.   failing to train its employees on the safe and proper usage of cutting and welding equipment;

    j.   failure to maintain and follow proper lock out tag out procedures;

    k.   utilizing heavy trucks and lifts in an improper and unsafe manner;

    l.   compelling Matthew to perform hazardous duties without necessary and proper protective equipment; and

    m. failing to express due care under the circumstances described herein.

135.    The Defendants' actions and/or inactions were substantial factors and/or factual causes and/or increased the risk of harm to Matthew.

136.    As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness and willful and wanton conduct of defendants, and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives and employees, Matthew was caused to sustain serious and excruciating personal injuries which ultimately led to his death.

137.    The acts and omissions set forth herein were done in a negligent, grossly negligent, willful, reckless, and wanton fashion with a conscious indifference to the rights of members of the public generally, and Matthew in particular.

138.    As a direct result of the carelessness, negligence, recklessness, gross negligence, and/or other liability producing conduct of the Defendant River Drive, Matthew suffered severe pain and injuries that led to his death, including:

    a.   severe burns to his head, face, neck, anterior and posterior chest, left arm and hand, right arm, groin, genitals, and bilateral extremities;

    b.   abrasions to his neck, chest, abdomen, and back;

    c.   large laceration to the occipital region of his head;

d.  skull trauma;

e.  hemorrhage to the right occipital region and posterior frontal /parietal region of his scalp;

f.  subdural hemorrhage and subarachnoid hemorrhage;

g.  traumatic brain injury;

h.  conscious pain and suffering, and fear of impending death;

i.  death;

j.   a permanent loss of earnings and loss of earning capacity;

k.  permanent loss of enjoyment of life, loss of life's pleasures, and loss of life's hedonic pleasures.

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of Plaintiff and against Defendant, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

## COUNT IV

## STATE LAW CLAIM – WRONGFUL DEATH

### Plaintiff v. River Drive

139.    The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

140.    Matthew is survived by his daughter, Estella Baraniak, and his parents, Brian and Jaqueline Baraniak.

141.    By reason of Matthew's death, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support,

loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, and loss of guidance.

142.    As a direct and proximate result of the foregoing, decedent, Matthew's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

143.    Plaintiff, as the Personal Representative of the Estate of Matthew Baraniak, brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Pa.R.C.P. 2202, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law, namely Estella Baraniak, and Matthew's parents, Brian and Jaqueline Baraniak.

144.    Plaintiff brings this action by virtue of, inter alia, 42 Pa.C.S. § 8301 and claim all damages encompassed thereby, including any and all damages members of the Estate are entitled to under Rettger v. UPMC Shadyside, 991 A.2d 915 (Pa. Super. 2010).

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendant, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

## COUNT V

## STATE LAW CLAIM – SURVIVAL ACT

### Plaintiff v. River Drive

145.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

146.    Plaintiff claims on behalf of the Estate of Matthew Baraniak all damages suffered by the Estate by reason of the death of Matthew Baraniak, including, without limiting the generality of the following: the severe injuries and symptoms suffered by Matthew Baraniak, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Matthew Baraniak suffered prior to his death; the loss of future earning capacity suffered by Matthew Baraniak from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained by reason of the Defendants' conduct.

147.    Plaintiff brings this action on behalf of the Estate of Matthew Baraniak, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of Matthew's Estate, and other persons entitled to recover under law.

**WHEREFORE,** Plaintiff demands that judgment be entered in favor of the Plaintiff and against Defendant, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

By:    _/s/ *Kimberly Spangler Loutey*
Kimberly Spangler Loutey, Esq.
Attorney for Plaintiff
3000 Atrium Way
Mount Laurel NJ, 08088
610-299-4189
PA Bar Id: 319639

*/s/ Patricia A. Shipman*

Patricia A. Shipman, Esquire
Attorney for Plaintiff
25 West Third Street, Suite 300
Williamsport, PA 17701
570-601-6636
PA Bar Id. 82122