IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY MURPHY, Personal Representative of the Estate of Matthew Baraniak,<br>    Plaintiff<br><br>    v.<br><br>DAUPHIN COUNTY, et al.,<br>    Defendants | :<br>:<br>:   No. 1:21-cv-01237<br>:<br>:   (Judge Kane)<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM**

This is a civil rights action brought by Holly Murphy ("Plaintiff"), the personal representative of Matthew Baraniak's estate. (Doc. No. 1.) Baraniak sustained fatal injuries in July 2019 while working at the River Drive Service Center, Inc. ("River Drive") on work release from the Dauphin County Work Release Center ("WRC"). Plaintiff asserts federal civil rights claims against Dauphin County (or "the County") and River Drive, Shane Staley, and James Ellerman ("River Drive Defendants") pursuant to 18 U.S.C. § 1983. She also asserts state law claims against the River Drive Defendants. Dauphin County (Doc. No. 10) and the River Drive Defendants (Doc. No. 16) move to dismiss Plaintiff's claims. For the reasons that follow, the Court will grant the County's motion and grant in part and deny in part the River Drive Defendants' motion. As to certain claims, the Court will grant leave to amend.

**I.  BACKGROUND**[1]

In late 2018, Baraniak was hired by River Drive, a service center involved in heavy equipment repair and recovery. (Id. ¶¶ 30, 34.) Several months later, in May 2019, a state court

---

[1] This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true, exhibits attached to the complaint, matters of public record, and documents that form the basis of and are integral to a claim. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

sentenced him to serve time at the WRC, a corrections facility that provides its inmates with an opportunity to "maintain previously secured or newly gained employment." (Id. ¶¶ 28-29.) The WRC assigned Baraniak to continue working at River Drive, which at the time had "numerous ongoing and publicly available [Occupational Safety and Health Administration ('OSHA')] violations, related to workplace safety and hazardous conditions." (Id. ¶ 32.) Baraniak worked Monday through Friday, as well as Saturday when River Drive was closed; he had never before been required to work Saturdays. (Id. ¶¶ 33-34.)

While a WRC inmate, Baraniak, like all other WRC inmates, was required to comply with the WRC's Male Resident Guide ("Guide"). (Id. ¶ 55.) The Guide contains "official [WRC] policies and procedures" drafted and implemented by WRC Director Matthew Miller. (Id. ¶¶ 52, 55.) Pursuant to the Guide, inmates must maintain full-time or close to full-time employment and are encouraged to take on additional work, may not take time off from a current job to apply to other employers, and cannot change employers without obtaining WRC approval, securing new employment, and providing two weeks' notice to their current employers. (Id. ¶¶ 57-58, 61-62.) According to the complaint, inmates must comply with staff decisions, cannot "seek[] help from any other staff member to mediate," and may not quit a job "without suffering consequences such as loss of privileges, bunk arrest or return to the Dauphin County Prison[.]" (Id. ¶¶ 56, 60.)

On Saturday, July 13, 2019, Baraniak reported to River Drive for work. (Id. ¶ 35.) Because the service station was usually closed Saturdays, only he and his supervisor, Defendant Ellerman, were present. (Id. ¶¶ 36, 99.) Ellerman instructed Baraniak to get on a high scissor lift and use a torch to remove a door from the back of a garbage truck, which was "dangerously and improperly suspended" by metal chains attached to a forklift. (Id. ¶ 37.) Ellerman then left Baraniak alone. (Id. ¶ 38.) Baraniak rode the lift to about twenty feet above the ground and

began using the torch despite lacking the requisite qualifications, training, and certifications to do so. (Id. ¶ 39.) A shift in the truck upended the forklift, striking Baraniak in the head. (Id.) Baraniak was pronounced deceased at the scene from head trauma and severe burns. (Id. ¶¶ 43-45.) OSHA later determined that River Drive had been in willful violation of several safety-related regulations. (Id. ¶¶ 46-47.)

Plaintiff commenced this action on July 13, 2021, asserting Eighth and Fourteenth Amendment § 1983 claims against Dauphin County (Count I) and the River Drive Defendants (Count II), along with state law negligence, wrongful death, and survivorship claims against the River Drive Defendants (Counts III-V). Dauphin County filed its motion to dismiss on August 19, 2021 (Doc. No. 10), and a brief in support on October 18, 2021 (Doc. No. 19), Plaintiff filed a brief in opposition on December 7, 2021 (Doc. No. 26), and Dauphin County filed a reply brief on December 30, 2021 (Doc. No. 30). The River Drive Defendants filed their motion to dismiss and brief in support on October 8, 2021 (Doc. No. 16), Plaintiff filed a brief in opposition on November 29, 2021 (Doc. No. 29), and the River Drive Defendants filed a reply brief on December 13, 2021 (Doc. No. 27.) Accordingly, both motions to dismiss (Doc. Nos. 10, 16) are ripe for disposition.

## II.  LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions proffered as

factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Plaintiff asserts her federal claims pursuant to 18 U.S.C. § 1983. Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim for relief under § 1983, a plainitff

"must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under color of state law." See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### A. Claims Against Dauphin County (Count I)[2]

In Count I of her complaint, Plaintiff alleges that Dauphin County—through the WRC and its director, Matthew Miller—violated Baraniak's Eighth Amendment rights by subjecting him to cruel and unusual punishment. She also alleges violations of Baraniak's due process and equal protection rights but makes no mention of those claims in her opposition papers. The Court will therefore first address her Eighth Amendment claims.

#### 1. Eighth Amendment Claims

Plaintiff alleges that Dauphin County implemented and executed a policy or custom of requiring WRC inmates, including Baraniak, to perform dangerous work, in hazardous conditions, without proper qualifications or training, and with deliberate indifference to their health and safety. (Doc. No. 1 ¶ 83.) She maintains that the WRC's execution of that policy directly violated Baraniak's rights and caused his death. (Id.) Plaintiff additionally asserts that the County: (1) maintained "grossly inadequate training [as] to the assessment and monitoring of inmates and their work conditions at their assigned places of employment while incarcerated in the WRC"; and (2) "fail[ed] to adequately supervise and evaluate the work conditions faced by

---

[2] WRC Director Matthew Miller is not a party to this action. The complaint includes three references to Miller suggesting that Plaintiff seeks to sue him in both his individual and official capacities (Doc. No. 1 ¶¶ 18, 51, 93), but Miller is not named as a defendant in the complaint's caption (id. at 1), he is not referenced as a separate defendant in Plaintiff's opposition papers (Doc. No. 26), and a review of the docket in this case indicates that no summons was issued for service of the complaint upon him. Accordingly, the Court will not opine as to any potential claims against Miller, if any, separate and apart from the claims against Dauphin County.

5

[WRC] inmates at their assigned places of employment[,] amount[ing] to deliberate indifference, because such inaction resulted in a violation of [Baraniak]'s rights." (Id. ¶¶ 72, 75.)

Municipalities such as Dauphin County are considered "persons" under § 1983 and may therefore be held liable for injuries caused by violations of constitutional rights. See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). They can only be held liable, however, "for their own illegal acts." See Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986). It is only when a municipality's "execution of [a] policy or custom . . . inflicts the injury" that the municipality "as an entity is responsible under § 1983." See id. at 694. Thus, to plead a § 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

As to the first element of Plaintiff's Eighth Amendment Monell claim—the existence of an underlying constitutional violation—the Eighth Amendment's prohibition on cruel and unusual punishment imposes an affirmative duty on the part of prison officials to provide inmates with "humane conditions of confinement." See Farmer v. Brennan, 511 U.S. 825, 832 (1994)). As part of that duty, prison officials must "take reasonable measures to guarantee the safety of the inmates." See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer, 511 U.S. at 832). A claim asserting unlawful conditions of confinement requires allegations that: (1) the plaintiff "was 'incarcerated under conditions posing a substantial risk of serious harm'"; and (2) "the acts or omissions of the prison official(s) reflected deliberate indifference to the plaintiff's health or safety." See Burrell v. Loungo, 750 F. App'x 149, 158 (3d Cir. 2018) (unpublished) (quoting Farmer, 511 U.S. at 832).

When a "plaintiff's Eighth Amendment claim concerns his working conditions, he can meet the first prong of this test by alleging facts that show that he was 'compelled to perform

6

physical labor which is beyond [his] strength, endangers [his] li[fe] or health, or causes undue pain.'" See id., 750 F. App'x at 158 (alterations in original) (quoting Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)); Johnson v. Townsend, 314 F. App'x 436, 440 (3d Cir. 2008) (unpublished) (same). Courts have construed this standard to require allegations that prison officials "knowingly compell[ed]" such physical labor. See Zahn v. Nygaard, 989 F.3d 1070, 1073 (8th Cir. 2021); see also Smith v. Peters, 631 F.3d 418, 419 (7th Cir. 2011) (same); O'Bryant v. Culpepper, 214 F.3d 1350 (5th Cir. 2000) (same).

Having considered the relevant law, Plaintiff's allegations, and the parties' contentions, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim against the County. Specifically, Plaintiff has failed to plausibly allege that Miller or any other WRC staff directly and knowingly compelled Baraniak to perform dangerous work, for which he was not qualified, trained, nor certified, at River Drive.[3] She does not allege that Baraniak informed anyone at the WRC that he was untrained, uncertified, and/or unqualified to perform the dangerous work assigned to him, and she does not allege that Baraniak expressed any concerns to the WRC about his safety or qualifications during either the six-month period preceding his commitment to WRC custody or the short period of time he worked there as a WRC inmate. Accordingly, Plaintiff has failed to plausibly allege an underlying Eighth Amendment violation, i.e., that the County, through the WRC and its personnel, knowingly compelled Baraniak to

---

[3] Two of Plaintiff's allegations are conclusory and therefore not entitled to the assumption of truth. See Santiago, 629 F.3d at 130. She alleges that under WRC written policy, inmates subject to unsafe working conditions "cannot simply quit their employment without suffering consequences." (Doc. No. 1 ¶ 60.) She also alleges a WRC policy of "encourag[ing]" inmates to work in "unsafe and dangerous workplace conditions." (Doc. No. 1 ¶¶ 60, 69). Neither the Guide, which clearly forms the basis of Plaintiff's policy-based claims, nor her well-pleaded allegations, support a reasonable inference that WRC written policy imposed mandatory consequences for an inmate's decision to quit an unsafe job or directly encouraged inmates to perform unsafe work. As such, these allegations are not entitled to the assumption of truth.

7

perform dangerous work in violation of his Eighth Amendment rights. See, e.g., Burrell, 750 F. App'x at 158; Berry, 39 F.3d at 1057.

Finally, the Court notes that the cases cited by Plaintiff all involved prison officials who directly and knowingly compelled inmates (or, as in Burrell, a civil contemnor) to perform dangerous work. See Burrell, 750 F. App'x at 158 (civil contemnor forced to work in recycling center overseen by corrections officers despite complaints of unsafe work conditions); Thomas, 2014 WL 2514817, at *9 (inmate forced to use jackhammer despite protests that he lacked the training to safely operate it); Smith, 631 F.3d at 419; (inmate forced to work outside without gloves and with minimal protective clothing despite complaints about the hazardous weather-related conditions); Morgan, 465 F.3d at 1043 (inmate forced to work at prison print shop despite complaints to his supervisor about a defective printing press). There are no similar allegations contained in Plaintiff's complaint.[4] The cases cited by Plaintiff are therefore inapposite.

Absent allegations from which the Court could infer the presence of an underlying constitutional violation—and regardless of the theory upon which Plaintiff proceeds, e.g., unconstitutional policy, failure to train, failure to take action—"there can be no derivative municipal claim." See Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227 (3d Cir. 2013); see also Kneipp, 95 F.3d at 1204 (noting that § 1983 liability "may attach to a municipality if it had a policy or custom of failing to train its employees and that failure caused [an] underlying constitutional violation"); Natale, 318 F.3d at 583-84. Accordingly, the Court will grant the County's motion to dismiss Count I to the extent of dismissing Plaintiff's Eighth Amendment

---

[4] Plaintiff's reliance on Natale—where the Third Circuit recognized the viability of a Monell claim against a private company that provided health care to a correctional facility—is similarly unavailing. Natale involved claims of an underlying constitutional violation: that employees of the private health care provider knowingly delayed obviously needed medical treatment for non-medical reasons. See Natale, 318 F.3d at 583-84. Here, in contrast, no such underlying violation has been alleged.

claim against the County. The Court will, in fact, dismiss Count I in its entirety, as discussed below, given that she has also failed to state any due process or equal protection claims.

### 2. Due Process and Equal Protection Claims

Plaintiff's complaint contains conclusory assertions of violations of Baraniak's due process and equal protection rights. As the Court discussed, supra, Plaintiff does not mention these claims in her opposition brief (Doc. No. 26), despite the County's arguments in support of their motion to dismiss the claims (Doc. No. 19 at 5-6). To the extent Plaintiff has not abandoned these claims, she does not allege that Baraniak "received different treatment from that received by other individuals similarly situated," see Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005), or that he was deprived of a "protected property interest" without being afforded an adequate "procedure for challenging the deprivation, see Nicolette v. Caruso, 315 F. Supp. 2d 710, 721 (W.D. Pa. 2003). Further, in the context of inmates incarcerated after conviction, it is the Eighth Amendment, and not the Due Process Clause, that provides a means of vindication for violations relating to conditions of confinement. The Court will therefore grant the County's motion to dismiss Count I as to Plaintiff's due process and equal protection claims. However, the Court will grant Plaintiff leave to amend her complaint to cure the deficiencies identified in this Memorandum as to Count I.

### B. Claims Against the River Drive Defendants (Counts II-V)

The remaining counts of Plaintiff's complaint assert claims against the River Drive Defendants for constitutional violations under § 1983 (Count II), as well as state law claims for negligence, wrongful death, and survivorship (Counts III, IV, V). Plaintiff alleges, among other things, that the River Drive Defendants compelled Baraniak to perform hazardous duties for which he was not properly trained, qualified, or certified, failed to properly train and supervise him, failed to provide him with necessary protective equipment, and created hazardous

workplace conditions that exposed Baraniak to an unreasonable risk of serious harm. (Doc. No. 1 ¶¶ 116-18.) The Court will first address Plaintiff's § 1983 claims.

### 1. Section 1983 Claims (Count II)

In Count II of her complaint, Plaintiff alleges that the River Drive Defendants (i.e., Ellerman, Staley, and River Drive) failed to discharge their "duty under the Eighth and Fourteenth Amendments to refrain from subjecting [Baraniak] to obviously unsafe and dangerous working condition." (Id. ¶ 114.) She further alleges, inter alia, that the River Drive Defendants exposed Baraniak to an "unreasonable risk of serious harm" by "compell[ing] [him] to perform hazardous duties [that] they knew he was not properly trained, qualified, or certified to perform" and did so with deliberate indifference to his safety. (Id. ¶¶ 115-16.) Plaintiff avers that the River Drive Defendants compelled Baraniak to do so without properly supervising and monitoring him and without providing him with any protective gear. (Id. ¶ 118.)[5]

In the Court's view, upon consideration of the complaint, the parties' arguments, and the applicable legal standards, Plaintiff's allegations sufficiently plead an Eighth Amendment claim against Ellerman and Staley, but not as to River Drive itself. As to Ellerman and Staley, Plaintiff has adequately alleged that they knowingly compelled Baraniak to perform obviously dangerous tasks for which he was not properly trained, qualified, or certified, that they did so without providing him with protective gear, and that they failed to properly supervise and monitor him. These allegations adequately plead a claim for violations of Plaintiff's Eighth Amendment right

---

[5] Plaintiff further asserts that the same conduct deprived Baraniak of his rights to due process, equal protection, and right to liberty in his person and property. (Doc. No. 1 ¶ 120.) However, as was the case with her brief in opposition to Dauphin County's motion to dismiss, Plaintiff makes no mention of those claims in her brief in opposition to the River Drive Defendants' motion to dismiss. (Doc. No. 25.) Whether Plaintiff intends to abandon these claims is unclear. In any event, for the same reasons that she failed to state such claims against the County, Plaintiff has failed to state such claims against the River Drive Defendants, see supra.

to safe conditions of confinement in the prison work conditions context.  See, e.g, Thomas, 2014 WL 2514817, at *9; Smith, 631 F.3d at 419; Morgan, 465 F.3d at 1043; Johnson, 314 F. App'x at 440; Zahn, 989 F.3d at 1073; Smith, 631 F.3d at 419.

The arguments raised by Ellerman and Staley to the contrary are unavailing given the Court's obligation, on a motion to dismiss, to accept Plaintiff's allegations as true and draw all reasonable inferences from them in a light most favorable to her.  Both Ellerman and Staley argue that Plaintiff has failed to plead that they were acting under color of state law when supervising Baraniak.  However, courts have recognized that persons or entities "to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment."  See Castillo v. Day, 790 F.3d 1013, 1020 n.5 (10th Cir. 2015); see also Est. of Pendelton ex rel. Pendelton v. Davis, No. 1:06-cv-01945, 2007 WL 1300743, at *5 (M.D. Pa. May 3, 2007) (finding § 1983 claim against WRC-assigned private employer sufficiently pleaded where the WRC had allegedly delegated its supervisory functions to the employer).  Here, Plaintiff alleges that Ellerman and Staley "acted as agents of the Department of Corrections in monitoring Baraniak while he was away from the WRC but restrained and in custody on the River Drive premises," and that they were required to enforce WRC rules, report violations, and "cooperate with [c]orrections officials in monitoring [Baraniak] and implementing security policies."  (Id. ¶¶ 106, 108-09, 110.)  These allegations support a plausible inference that Ellerman and Staley were acting under color of state law when supervising Baraniak.[6]  See e.g., Pendelton, 2007 WL 1300743, at *5.

---

[6] The River Drive Defendants do not dispute that inmate supervision is traditionally and exclusively a state function; they instead argue that the "function" served by the River Drive Defendants was that of an ordinary employer. (Id. at 9.)  However, the basis for this argument is a document that the Court cannot consider at this stage of the proceedings given Plaintiff's contention that she has never seen or relied upon the document. (Doc. No. 25 at 13). The River Drive Defendants' arguments based on the contents of that document are therefore unavailing.

11

Staley advances the additional argument that Plaintiff has failed to allege that he had any personal involvement in the conduct alleged in the complaint. The Court finds this argument unavailing at this stage of the proceedings. "Personal involvement [in a § 1983 claim] can be shown through allegations of personal direction or of actual knowledge and acquiescence." Argueta v. U.S. Immigr. & Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011). Plaintiff has alleged that Staley controlled the operations of River Drive, knew of the River Drive's ongoing OSHA violations, knew that Baraniak was untrained, unqualified, and uncertified to perform the work assigned to him, and had knowledge of dangerous and hazardous conditions at River Drive. Although Ellerman allegedly directed Baraniak to perform the task that took his life, the Court concludes that Plaintiff's allegations state a plausible claim that Staley, "as the person[] in charge, had knowledge of and acquiesced in [the] violations" asserted here. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Accordingly, the Court concludes that Plaintiff has stated a plausible Eighth Amendment claim against Ellerman and Staley.

As to River Drive the entity, however, the Court agrees with River Drive that the complaint, as presently pleaded, alleges only vicarious liability claims, and that River Drive "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." See Natale, 318 F.3d at 583. To state a § 1983 claim against River Drive, Plaintiff must allege that "a relevant [River Drive] policy or custom . . . caused the constitutional violation[s]" alleged here. See id. at 584. In her complaint, Plaintiff alleges that "River Drive is vicariously liable for the wrongful actions of [] Staley and Ellerman, under doctrines including, but not limited to, agency, respondeat superior, master-servant, joint venture and contract." (Doc. No. 1 ¶ 100.) She does not allege a River Drive policy or custom that caused Baraniak's

injuries, or that Staley or anyone else was River Drive's official policymaker.[7]  Accordingly, Plaintiff has failed to state a § 1983 claim against River Drive itself.  See, e.g., Natale, 318 F.3d at 583; Santiago, 629 F.3d at 135 (affirming the dismissal of a Monell claim for the plaintiff's failure to allege that someone with "policymaking authority" implemented a policy or custom). The Court will therefore dismiss Plaintiff's claims against River Drive itself asserted in Count II but, as with Count I of her complaint, will afford Plaintiff an opportunity to amend her complaint to cure the deficiencies identified in this Memorandum.  As indicated herein, supra, the Court will not dismiss Plaintiff's claims against Ellerman and Staley asserted in Count II.

### 2. State Law Claims (Counts III, IV, V)

Although Plaintiff has failed to state a § 1983 claim against River Drive itself, she has, for reasons discussed, supra, stated § 1983 claims against Ellerman and Staley for violations of Baraniak's right to safe conditions of confinement.  The Court will therefore turn to Plaintiff's state law claims, which she asserts against all three of the River Drive Defendants.

The River Drive Defendants contend that Plaintiff's state law claims are barred by the exclusivity provisions in Pennsylvania's Workers' Compensation Act ("Act"), 77 P.S. §§ 1-2710.  The Act provides coverage for injuries "arising in the course of [an employee's] employment and related thereto" and extends to deaths directly resulting from any such injuries. See 77 P.S. § 411(1).  It further provides that the "workers' compensation system [is] the exclusive remedy for an injured employee seeking redress from an employer for an on-the-job injury."  See Peck v. Delaware Cnty. Bd. of Prison Inspectors, 814 A.2d 185, 188 (Pa. 2002) (emphasis added).  The Act's exclusivity provisions apply to the employee as well as the employee's "legal representative, husband or wife, parents, dependents, next of kin or anyone

---

[7] While she appears to advance such allegations in her briefing (Doc. No. 25 at 13-16), they are not asserted in the complaint (Doc. No. 1).

otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined" under the Act.  See 77 P.S. § 481(a).

In this case, as the River Drive Defendants note, Ashley Snyder, the mother of Baraniak's surviving daughter, reported his injury and death to the Bureau of Workers' Compensation ("Bureau") on July 23, 2019, and ultimately signed an "Agreement for Compensation for Death" between herself and River Drive's insurer. (Doc. No. 16-3.)[8]  That agreement, which is signed by Ms. Snyder as the guardian and/or representative of Baraniak's daughter, provides for compensation payable to his daughter in accordance with the Act. (Id. at 6-7); see 77 P.S. § 561(1) (directing that workers' compensation benefits, when the employee's injuries result in death, be paid to a "widow []or widower entitled to compensation" and, if none, to the guardian of the employee's child).  The Act's exclusivity provisions, together with the fact that Baraniak's daughter applied for and received workers' compensation death benefits, make clear that Plaintiff's state law claims are barred by the Act.  See, e.g., Peck, 814 A.2d at 188.

Plaintiff contends that the Act's exclusivity provisions are inapplicable because Baraniak was incarcerated when he was injured, noting that 77 P.S. § 511.1 prohibits the payment of compensation "for any period during which" the injured employee "is incarcerated after a conviction."  See id.  However, Baraniak is not incarcerated, and his daughter applied for and received workers' compensation death benefits.  Accordingly, the Court will dismiss Plaintiff's

---

[8] The Agreement is an exhibit to the River Drive Defendants' motion to dismiss and is part of a document relating to Baraniak's daughter's application for workers' compensation benefits, which was apparently pursued by Baraniak's girlfriend on the minor daughter's behalf. (Doc. No. 16-2.)  Because Plaintiff does not dispute the authenticity of that document (Doc. No. 25 at 18-20), the Court will take judicial notice of it in deciding the River Drive Defendants' motion to dismiss.  See, e.g., Bing v. Iron Mountain Secure Shredding, Inc., No. 17-cv-04191, 2018 WL 466456, at *1 (E.D. Pa. Jan. 18, 2018) (taking judicial notice of an agreement concerning workers' compensation claims) (citing Zuber v. Boscov's, 871 F.3d 255, 257 (3d Cir. 2017)).

state law claims asserted in Counts III, IV, and V with prejudice.

### C. Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)). As her complaint currently stands, Plaintiff has failed to state: (1) federal § 1983 claims against the County (Count I); (2) § 1983 claims as to River Drive the entity (and not Ellerman or Staley) (Count II); and (3) state law claims against all of the River Drive Defendants (Counts III, IV, and V). The Court will grant Plaintiff leave to amend her complaint as to Counts I and II, as it would be neither inequitable nor futile to permit her to do so. She may file an amended complaint as to those counts in order to cure the deficiencies identified herein in accordance with the Court's contemporaneously issued Order concerning the pending motions.

As to her state law claims, however, granting Plaintiff leave to amend would be futile because all of those claims (Counts III, IV, and V) are barred by the Workers' Compensation Act's exclusivity provisions. Because it would be futile to permit amendment as to those claims, the Court will dismiss Counts III, IV, and V with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Dauphin County's motion to dismiss the only count against it (Count I) without prejudice. The Court will grant in part the River Drive Defendants' motion to dismiss (Doc. No. 16) to the extent of dismissing Count II (as to River

Drive the entity and <u>not</u> as to Ellerman or Staley) without prejudice and dismissing Counts III, IV, and V as to all of the River Drive Defendants with prejudice. An appropriate Order follows.